IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ELIZABETH SMITH, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 21-436 |
| § | |
| HEALTHPLANONE, LLC § | |
| § | |
| Defendant. § | |
| § | |

## PLAINTIFF ELIZABETH SMITH'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Elizabeth Smith brings this action against her former employer, Health Plan One, for disability discrimination under the Americans with Disabilities Act (ADA) as amended by the ADA Amendments Act (ADAAA).

### Parties

1. Plaintiff Elizabeth Smith is an individual residing at Bexar County, Texas. She may be served with papers in this case through the undersigned counsel.

2. Defendant HealthPlanOne, LLC is a foreign limited liability company organized under the laws of the State of Connecticut. It maintains its principal place of business at 1614 Sidney Baker St., Kerrville, Texas 78028. It may be served with process through its registered agent, Business Filings Incorporated, at 701 Brazos Street, Ste. 720, Austin, Texas 78701.

### Jurisdiction and Venue

3. The Court possessed subject matter jurisdiction over this case because Plaintiff's claims are brought under a federal statute, the Americans with Disabilities Act as amended by the

1

ADA Amendments Act. The Court possesses personal jurisdiction over Defendant because Defendant constantly conducts business in Texas and maintains offices in Texas. Venue is proper in the Western District of Texas because all of the events giving rise to Plaintiff's claims occurred within the geographic confines of the San Antonio Division.

**Factual Background**

4.     Plaintiff was hired by HealthPlanOne, LLC ("HPOne") on or about September 5, 2019 as a Sales Inbound Health Agent. Her start date was September 9, 2019.

5.     After she received an offer letter from Defendant, Plaintiff was told that HPOne would need to run a background check and a drug test. Plaintiff went to the drug screening on or about September 6. Prior to her drug screen, Plaintiff disclosed to the lab tech that she had prescriptions with her for Adderall, Wellbutrin, and Xanax. However, Plaintiff had not taken the Xanax yet, but she did have a prescription for it. When Plaintiff asked the tech to verify the prescriptions, she said, "We don't do that."

7.     Plaintiff has a history of ADHD and depression stemming from a young age. However, Plaintiff lost her daughter 6 years ago to suicide, and this traumatic event magnified the effects of her disability. Since her daughter's passing, Plaintiff has been raising her young granddaughter. Plaintiff's granddaughter also has very significant mental health issues stemming in part from the fact that she was the one who discovered her mother's body. Following her daughter's suicide, and once she obtained medical insurance, Plaintiff's psychiatrist—Robert Jimenez—put Plaintiff on Adderall to help with focus and Wellbutrin for depression. The psychiatrist also advised Plaintiff to get into therapy, which Plaintiff did. Plaintiff was also prescribed Xanax for anxiety. However, Plaintiff does not take the Xanax medication on a regular basis; rather, she takes it as needed.

8. Plaintiff started working for Defendant officially on September 9. Training was supposed to last for three weeks.

9. On September 13, Plaintiff was training as usual. Around mid-morning, right before a break, Plaintiff's instructor said, "Brenda from HR needs you to call her." Shortly thereafter, Plaintiff called Brenda. She advised Plaintiff that her drug test was positive. Plaintiff responded, "Well I am on Adderall and Wellbutrin. I have a prescription." Plaintiff explained that she takes these medications to cope with the death of her daughter. Brenda then asked, "Do you have it with you?" Plaintiff told her that she did. She then asked Plaintiff to send her the pictures of the prescriptions. Plaintiff did so. Initially when Plaintiff sent them, the pictures were kicked back to her because the email address was wrong.

10. After about 5-10 minutes, Plaintiff called Brenda back to advise her that she (Plaintiff) needed the correct email address so she could send the photos again. Brenda responded, "Well I never got your email, but I did talk to a higher up and they basically said a positive is a positive so unfortunately I have to tell you that we can't continue your training and you need to go home." Again, Plaintiff reiterated that she had a prescription and that she was prepared to send it to her. Plaintiff even asked if she needed a doctor's note. However, Brenda responded, "No, unfortunately there's nothing I can do." Plaintiff told Brenda that she (Plaintiff) was taking the medication for depression since she was still dealing with her daughter's suicide. Brenda's response was, "Oh, I'm so sorry." The call ended shortly thereafter.

11. A few days later, Plaintiff called Brenda to find out when Plaintiff needed to pick up her final paycheck. When they spoke, Plaintiff told Brenda, "It would have been really nice if you had let me give you what I needed to give you to prove that I have a prescription. You should

3

be ashamed of yourself." Brenda's response was, "Oh no, it's the third party we go through that took the urinalysis that wouldn't."

### Disability Discrimination in Violation of the Americans with Disabilities Act
### (as amended by the ADA Amendments Act)

12. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 11 supra. Defendant is an employer within the meaning of the ADA in that in each year relevant to this lawsuit, it has employed more than 15 employees in 20 or more calendar weeks. Likewise, Plaintiff was an employee of Defendant within the meaning of the ADA.

13. Plaintiff suffers from depression and anxiety, which render her substantially limited in various major life activities/major bodily functions. Despite these limitations, Plaintiff is a qualified individual and was fully capable of performing her job with Defendant. Plaintiff took lawful, prescription medications to mitigate the effects of her disabling medical conditions. These prescription medications did not adversely impact Plaintiff's ability to do her job and posed no safety risk to Plaintiff or others. Plaintiff did not, and does not, take any unlawful drugs or medications.

14. Defendant subjected Plaintiff to a drug screen after she commenced employment with Defendant. This drug screen was positive. Plaintiff asserts that the positive test result was the result of her prescriptions medications that she takes for her disabilities, as she takes no illegal drugs or medications. Plaintiff explained to Defendant that she took prescription medications that caused the positive test result, and that she takes these prescription medications for her disabilities. Defendant refused to listen. Nor did Defendant connect Plaintiff with the medical review officer. Instead Defendant discharged Plaintiff for taking prescription medications she needed to treat her disabilities. In Defendant's words, "a positive test result is a positive test result."

15. By discharging Plaintiff for testing positive for medications that she was prescribed for her disabilities, Defendant unlawfully discriminated against Plaintiff because of her disability and also failed to provide Plaintiff with reasonable accommodation (by refusing to allow Plaintiff to work while taking prescribed medications necessary to treat her disabilities).

16. As a result of Defendant's illegal discrimination, Plaintiff has suffered, and will likely continue to suffer in the future, lost wages and benefits. Additionally, Defendant's illegal discrimination against Plaintiff has caused Plaintiff emotional distress, mental anguish, humiliation, embarrassment, damage to reputation, and loss of enjoyment of life. Plaintiff also sues to recover damages for these injuries.

17. Moreover, because Defendant acted with malice, or with reckless indifference towards Plaintiff's federal-protected rights, Plaintiff is entitled to an award of punitive damages. Moreover, because Plaintiff has had to retain legal counsel to vindicate her rights under the ADA, Plaintiff is entitled to an award of attorney fees and costs of court.

### Jury Demand

18. Plaintiff demands a trial by jury.

### Conclusion and Prayer

19. Plaintiff prays that upon final judgment she be awarded the following:

   a. Lost wages and benefits in the past and in the future;

   b. Compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, damage to reputation; and loss of enjoyment of life;

   c. Exemplary damages;

   d. Attorney fees;

   e. Costs of court;

f. Pre- and post-judgment interest; and

g. All other relief to which Plaintiff is entitled.

        Respectfully submitted,

        */s/Michael V. Galo, Jr.*
        Michael V. Galo, Jr.
        State Bar No. 00790734
        Federal Bar No. 19048
        GALO LAW FIRM, P.C.
        4230 Gardendale, Bldg 401
        San Antonio, Texas 78229
        Telephone: 210.616.9800
        Facsimile: 210.616.9898
        Email: mgalo@galolaw.com
        ATTORNEY FOR PLAINTIFF
        ELIZABETH SMITH